UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NAOMI L. HAYNES                              CIVIL ACTION

VERSUS                                       NO. 11-2289

MICHAEL J. ASTRUE, COMMISSIONER              SECTION "F" (2)
OF SOCIAL SECURITY ADMINISTRATION

## ORDER ON MOTION, AND
## FINDINGS AND RECOMMENDATION

Plaintiff, Naomi L. Haynes, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for supplemental security income benefits ("SSI") under Title XVI of the Act. 42 U.S.C. §§ 405(g), 1381a. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B).

As ordered, Record Doc. No. 13, Haynes filed a Memorandum of Facts and Law. Record Doc. No. 18. Although her memorandum was filed one day late, defendant sought and received a 21-day extension of time to file his reply memorandum, which cured any prejudice from plaintiff's untimely filing. Record Doc. Nos. 22, 23. The Commissioner then filed his reply memorandum one day after the deadline, without seeking leave to do so. Record Doc. No. 24. The court has nonetheless considered defendant's submission.

Haynes filed two motions to submit additional evidence. Record Doc. Nos. 20, 31. The Commissioner filed memoranda in opposition to both motions. Record Doc. Nos. 30, 34. Having considered the record, the submissions of the parties and the applicable law, and for the reasons stated below, IT IS ORDERED that plaintiff's motions to submit additional evidence are DENIED.

## I.  PROCEDURAL HISTORY

Haynes filed an application for SSI on September 10, 2009, alleging disability since May 12, 2009, due to bipolar disorder and depression. (Tr. 113, 126, 131). After her application was denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 4, 2011. (Tr. 28-55). On March 4, 2011, the ALJ issued a decision denying plaintiff's application for SSI. (Tr. 13-24). After the Appeals Council denied review on August 2, 2011, the ALJ's decision became the final decision of the Commissioner for purposes of this court's review. (Tr. 1-6).

## II.  STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.  The ALJ erred in finding that plaintiff does not meet or medically equal Listing 12.04 for affective disorders.

B.  The ALJ erred in affording greater weight to the opinion of a consultative examiner than to that of plaintiff's treating psychiatrist.

III.    ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.    Haynes has not engaged in substantial gainful activity since the application date of September 10, 2009.[1]

2.    She has a severe impairment of bipolar disorder.

3.    Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1, including Listing 12.04 for affective disorders, because she does not have at least two of the following: Marked restriction of activities of daily living; Marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

4.    Haynes has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: she is limited to work requiring simple, routine and repetitive tasks involving only occasional interaction with the general public and co-workers.

5.    Although plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

---

[1]"Claimants applying to the SSI program may not receive payments for a period predating the month in which they apply for benefits."  Rosetti v. Shalala, 12 F.3d 1216, 1224 n.20 (3d Cir. 1993) (citing 20 C.F.R. § 416.335); accord Brown v. Apfel, 192 F.3d 492, 495 n.1 (5th Cir. 1999).  "Thus, the month following an application . . . fixes the earliest date from which benefits can be paid." Hector v. Barnhart, 337 F. Supp. 2d 905, 910 (S.D. Tex. 2004) (citing 20 C.F.R. § 416.335; Brown, 192 F.3d at 495 n.1). However, as the ALJ noted, the medical records dating from plaintiff's alleged onset date of May 12, 2009 are relevant, 20 C. F. R. § 416.91(d), and the ALJ properly considered them.

6.      Haynes is capable of performing her past relevant work as a housekeeper and janitor.

7.      Alternatively, considering plaintiff's age, education, work experience and residual functional capacity, other jobs exist in significant numbers in the national economy that she is capable of performing, such as stocker, order filler and laundry worker.

(Tr. 18-23).

IV.    PLAINTIFF'S MOTIONS TO SUBMIT ADDITIONAL EVIDENCE

Haynes has twice moved to submit additional evidence to the court.  Record Doc. Nos. 20, 31.  The Commissioner opposes both motions.  Record Doc. Nos. 30, 34.

Plaintiff's first motion seeks to supplement the record with a "To Whom It May Concern" letter dated August 2, 2011 from her treating psychiatrist, Lori Gonzales-Qader, M.D.  Record Doc. No. 20-2.  The letter is dated almost five months after the ALJ's decision and on the same day that the Appeals Council denied review.

Haynes never submitted this letter to the Commissioner.  She argues that the letter "was not available" at the time of her administrative proceedings.  She contends that it should be admitted into the record because it addresses Dr. Gonzales-Qader's treatment of her since August 2009 and "clearly defines the diagnosis for the Court (schizoaffective disorder - bipolar or manic symptoms with symptoms of psychosis[)].  The offered exhibit sheds light upon the longstanding diagnoses of the treating physician and outlines symptoms" and "is further evidence regarding her current condition and her condition

leading up to the hearing date." Plaintiff's memorandum in support, Record Doc. No. 20-1 at pp. 1-2.

Plaintiff's second motion to submit additional evidence proffers a report of an examination by psychiatrist Richard W. Richoux, M.D., dated April 2, 2012. Record Doc. No. 31-3. This recent consultative examination was performed in connection with a new application for SSI that Haynes filed after her September 10, 2009 application was denied. Dr. Richoux is the same psychiatrist who evaluated Haynes at the request of the Commissioner in connection with her application that is current before this court. In denying that application, the ALJ accorded great weight to Dr. Richoux's December 4, 2009 report. (Tr. 19, 195-97).

Haynes argues that Dr. Richoux's 2012 report was not available at the time of her prior administrative proceedings. She asserts that it should be admitted into evidence because it confirms not only that she now has schizoaffective disorder with marked limitations in her psychological functioning, but also that she had the same diagnosis and limitations during the relevant period from 2009 through the date of the ALJ's decision. Thus, she contends that Dr. Richoux's April 2012 report is new and material evidence that she was qualified for disability under Listing 12.04 for affective disorders, as she argued in her September 10, 2009 application, and under Listing 12.03 for psychotic disorders. Her allegation that she met Listing 12.03 from May 2009 to early 2011 is a

new argument that she presents for the first time to the Commissioner and this court in her second motion for leave to submit additional evidence.

It is well established that this court may <u>not</u> issue factual findings on new medical evidence and may review such evidence only to determine if a remand to the Commissioner is appropriate. <u>Ferrari v. Astrue</u>, 435 F. App'x 314, 314-15 (5th Cir. 2010); <u>Martinez v. Astrue</u>, 252 F. App'x 585, 587 (5th Cir. 2007) (citing 42 U.S.C.A. § 405(g); <u>Haywood v. Sullivan</u>, 888 F.2d 1463, 1471 (5th Cir. 1989)); <u>Ripley v. Chater</u>, 67 F.3d 552, 555 (5th Cir. 1995). Accordingly, I must determine whether this case should be remanded so that the Commissioner may consider the allegedly new and material evidence.

The court may remand for consideration of new evidence only upon a showing that the evidence is new <u>and</u> material, <u>and</u> that good cause exists for plaintiff's failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g); <u>Ferrari</u>, 435 F. App'x at 314; <u>Joubert v. Astrue</u>, 287 F. App'x 380, 383 (5th Cir. 2008) (citing <u>Ripley</u>, 67 F.3d at 555); <u>Garson v. Barnhart</u>, 162 F. App'x 301, 303 (5th Cir. 2006) (citing <u>Leggett v. Chater</u>, 67 F.3d 558, 567 (5th Cir. 1995)).

"Evidence which is merely cumulative of that already in the administrative record is <u>not</u> 'new' evidence that would support a remand under § 405(g)." <u>Wilson v. Astrue</u>, No. H-08-01392, 2009 WL 2341803, at *4 (S.D. Tex. July 27, 2009) (citing <u>Pierre v. Sullivan</u>, 884 F.2d 799, 803 (5th Cir. 1989); <u>Bradley v. Bowen</u>, 809 F.2d 1054, 1058 (5th

Cir. 1987)) (emphasis added); accord Perkins v. Shalala, 36 F.3d 90, 1994 WL 523788, at *3 (5th Cir. Sept. 12, 1994); Martin v. Barnhart, No. 02-3574, 2004 WL 1661207, at *3 (E.D. La. July 23, 2004) (citing Pierre, 884 F.2d at 803).

New evidence must be material to be the basis for a remand. The "materiality inquiry requires determining whether the evidence relates to the time period for which the disability benefits were denied." Castillo v. Barnhart, 325 F.3d 550, 551-52 (5th Cir. 2003) (citing Ripley, 67 F.3d at 555); accord Joubert, 287 F. App'x at 383. This means that the new evidence cannot merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling. Id.; Garson, 162 F. App'x at 303.

"For new evidence to be material, there must exist the reasonable possibility that it would have changed the outcome of the [Commissioner's] determination." Hunter v. Astrue, 283 F. App'x 261, 262 (5th Cir. 2008) (citing Latham v. Shalala, 36 F.3d 482, 483 (5th Cir. 1994); Chaney v. Schweiker, 659 F.2d 676, 679 (5th Cir. 1981)) (quotations omitted); accord Jones v. Astrue, 228 F. App'x 403, 406 (5th Cir. 2008) (citing 28 U.S.C. § 405(g)).

The Commissioner concedes, solely for purposes of plaintiff's first motion to submit additional evidence, that Dr. Gonzales-Qader's letter dated August 2, 2011, is new because it did not exist when the ALJ issued her decision and material because it relates to the period for which Haynes was denied benefits. However, defendant argues

that plaintiff has failed to show good cause for her failure to incorporate this letter into the prior administrative record.

"To demonstrate good cause, the claimant must provide an excusable explanation for not submitting the records earlier in the proceeding." Dennison v. Astrue, No. 08-4677, 2010 WL 744935, at *6 (E.D. La. Mar. 1, 2010) (citing Pierre, 884 F.2d at 803; Skalij, 1996 WL 731580, at *3); see also Mouser v. Astrue, 545 F.3d 634, 637 (8th Cir. 2008) ("Good cause does not exist when the claimant had the opportunity to obtain the new evidence before the administrative record closed but failed to do so without providing sufficient explanation.") (quotation and citation omitted).

In the instant case, Haynes "does not provide a satisfactory explanation for [the letter's] absence from the initial proceedings." Leggett, 67 F.3d at 567. She has proffered no explanation why she could not have obtained a similar letter from Dr. Gonzales-Qader before the ALJ's or the Appeals Council's decisions. Dr. Gonzales-Qader was plaintiff's treating psychiatrist at the Chartres-Pontchartrain Behavioral Health Center ("Chartres-Pontchartrain"), where Haynes was seen about once a month during the year preceding the January 4, 2011 hearing (Tr. 216-39), and again at least once on June 2, 2011, according to the letter, Record Doc. No. 20-2, before the Appeals Council denied review. The mere "fact that evidence is 'new', meaning that it did not exist at a point in time such that it could have been incorporated into the administrative record, does not, by itself, constitute good cause for failing to incorporate such evidence

into the administrative record." Wilson, 2009 WL 2341803, at *4 (citing Pierre, 884 F.2d at 803).

It appears that the letter from Dr. Gonzales-Qader could have been obtained "at any time. [Haynes] has not offered good cause why the [doctor's evaluation] was not performed earlier." Pierre, 884 F.2d at 804; see also Wilson v. Astrue, 602 F.3d 1136, 1149 (10th Cir. 2010) (Plaintiff failed to show good cause for admitting letters from her therapist when "the only reason given for a failure to obtain and present such evidence sooner was that '[s]ubsequent treatment [after the ALJ's decision and before the Appeals Council's decision] . . . has greatly increased [the mental health center's] understanding of Ms. Wilson.' . . . . Allowing a claimant to hold opinion evidence as to her limitations to present to the district court in the first instance would seriously undermine the regularity of the agency process and is not allowed."). Because plaintiff has not shown good cause for the omission of Dr. Gonzales-Qader's letter from the administrative record, the letter cannot serve as the basis for a remand order.

Despite the Commissioner's concession that the letter is new and material, even if Haynes had demonstrated good cause to supplement the record with Dr. Gonzales-Qader's letter, I find that the letter is neither new nor material because (1) it is merely cumulative of the medical records from Chartres-Pontchartrain and (2) plaintiff has shown no reasonable possibility that it would have changed the outcome.

As previously stated, a cumulative report is not "new evidence" for purposes of the Act. Perkins, 1994 WL 523788, at *3; Wilson, 2009 WL 2341803, at *4; Martin, 2004 WL 1661207, at *3. "A comparison with what was previously in the record and what is purported to be in [Dr. Gonzales-Qader's August 2, 2011 letter] reveals almost identical information. . . . This purported new evidence is merely cumulative of that already in the record[.]" DiBlasi v. Comm'r of Soc. Sec., 660 F. Supp. 2d 401, 407 (N.D.N.Y. 2009); see also Van Valkenberg ex rel. B.G. v. Astrue, No. 1:08-CV-0959, 2010 WL 2400455, at *18 (N.D.N.Y. May 27, 2010), report & recommendation adopted, 2010 WL 2400443 (N.D.N.Y. June 10, 2010) (evidence was "not 'new' because [the recently examining physician in 2008] performed substantially the same tests that [plaintiff] had taken at various times in 2004 and 2006 and [the doctor] repeated diagnoses found elsewhere in the record.").

To the extent that Dr. Gonzales-Qader's letter contains additional information that is not cumulative of the medical records that the ALJ reviewed, the letter is not material because Haynes has not demonstrated a reasonable possibility that the letter would have changed the ALJ's decision. Some statements in the letter, such as that Haynes is "barely stable" on medications, has exhibited suicidal ideations and suffers from bradykinesia (slowed movements) and tremors as side effects of her medications, are unsupported or contradicted by the medical records. Record Doc. No. 20-2. None of these particular symptoms or observations are noted in the Chartres-Pontchartrain treatment notes. Dr.

Gonzales-Qader does not specify in her letter any dates when the many listed symptoms and drug side effects manifested themselves, or the intensity, duration and effect on work-related abilities of any such symptoms or side effects. The only date that Dr. Gonzales-Qader cites regarding any symptom is a report of suicidal ideation on June 2, 2011, three months after the ALJ's decision. According to the treatment records of every visit through November 18, 2010, Haynes either denied suicidal ideation or it was not even mentioned. The letter does not address whether any of the symptoms described have abated or been controlled with treatment, although the medical records indicate that this was indeed the case.

Because of these conflicts between the record evidence, the conclusory and unsupported nature of many of the letter's statements, and the real possibility, "with support in the record, that the physician is not credible and is leaning over backwards to support the application for disability benefits," Thompson v. Astrue, 232 F. App'x 421, 424 (5th Cir. 2007) (quotation omitted), the ALJ would have good cause to accord little or no weight to Dr. Gonzales-Qader's letter. Newton v. Apfel, 209 F.3d 448, 455-56 (5th Cir. 2000). Therefore, the letter has no reasonable possibility of changing the outcome of the ALJ's decision and is not material.

As to plaintiff's second motion to submit new evidence, the Commissioner argues that Dr. Richoux's April 2, 2012 report, Record Doc. No. 31-3, is not material because it is dated more than one year after the ALJ's decision and, at most, documents the

deterioration of a previously non-disabling condition.  The only explanation that Haynes offers regarding the timeliness of Dr. Richoux's recent report is that it was ordered by the Commissioner in connection with her later application for benefits and was therefore unavailable prior to the ALJ's and Appeals Council's decisions.  This is insufficient to establish good cause.

Again, a medical examination conducted after the ALJ's decision "alone is not sufficient to warrant a remand."  Leggett, 67 F.3d at 567.  In addition to her failure to show good cause for failing to incorporate Dr. Richoux's report, or a similar report by another examining psychiatrist, into the record earlier, Haynes has not demonstrated a reasonable possibility that this report would have changed the ALJ's determination.  To the contrary, Dr. Richoux's report indicates that plaintiff's condition has deteriorated since the date of the ALJ's decision.

First, I find that Dr. Richoux's report is not material because it is dated April 2, 2012.  This medical record reflects the results of an examination and diagnoses made almost three years after plaintiff's alleged onset date of May 12, 2009 and more than one year after the ALJ's decision.  The report is immaterial because it does not relate to the time period for which benefits were denied, which extended only from the application date of September 10, 2009 through March 4, 2011.  See Joubert, 287 F. App'x at 383-84 (records dated from two to more than five years after the expiration of plaintiff's insured status are not material); Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994) (report dated

two years after the medical records that the ALJ reviewed was "well outside the time frame in which the claimant applied for or was denied the benefits in question"); accord Sanchez v. Barnhart, 75 F. App'x 268, 270 (5th Cir. 2003) (citing Shave v. Apfel, 238 F.3d 592, 597 (5th Cir. 2001)).

Second, "[Haynes] offers no evidence that [her] current mental disability did not subsequently develop after [her] initial application or that it is not the result of the deterioration of a condition that was not previously disabling." Id. A comparison of Dr. Richoux's new report with his prior report dated December 4, 2009, indicates that plaintiff's symptoms and diagnoses have significantly worsened during those years.

At his December 2009 examination, Dr. Richoux found Haynes only "partially reliable" in relating her history. He noted his "significant skepticism concerning her reporting of psychotic symptoms" and did not believe that she exhibited true paranoia. (Tr. 195). He observed that plaintiff "did not interact with me as someone experiencing ongoing psychotic symptoms and I had significant doubts as to the truthfulness of the reporting of [auditory] hallucinations. This doubt became even more pronounced" with her report of visual hallucinations, which Dr. Richoux "d[id] not believe" because of the extreme rarity of such hallucinations, which usually occur only in circumstances completely unlike those she described. Dr. Richoux concluded that Haynes "did not show objective evidence on interview at the present time of psychopathology severe enough" to interfere with her activities of daily living. (Tr. 196) (emphasis added). He

found that she was only mildly depressed, without hallucinations, perceptual distortions or significant memory deficits. He noted that her judgment was grossly intact and her insight was unremarkable. Finding that plaintiff could be expected to experience mild to moderate depressive symptoms, Dr. Richoux diagnosed dysthymia,[2] a mild form of depression. He stated his opinion that she did not need to take antipsychotic medication. He opined that she was capable of understanding instructions, had no major psychiatric hindrances to her ability to sustain concentration and persistence in a work setting, and was not significantly impaired in any of her major adaptive capacities by psychiatric factors. (Tr. 197).

Dr. Richoux's observations and diagnosis 16 months later during his April 2, 2012 examination of plaintiff were more serious. He noted that Haynes is "obviously very depressed" and "manifests symptoms which are clearly due to a functional mental illness." Record Doc. No. 31-3 at pp. 3-4. Despite reported compliance with her medications, she reportedly continued to experience "a constellation of major depressive symptoms and intermittent auditory hallucinations, along with ongoing paranoia." Unlike in his 2009 report, Dr. Richoux expressed no doubt that plaintiff's symptoms

---

[2]Dysthymic disorder or dysthymia is "a mood disorder characterized by depressed feeling (sad, blue, low), loss of interest or pleasure in one's usual activities, and by at least some of the following: altered appetite, disturbed sleep patterns, lack of energy, low self esteem, poor concentration or decision-making skills, and feelings of hopelessness. Symptoms have persisted for more than two years but are not severe enough to meet the criteria for major depressive disorder." Dorland's Illustrated Medical Dictionary 529 (29th ed. 2000) (hereinafter "Dorland's").

were untruthful or exaggerated.  He found that she "showed objective evidence on interview at the present time of psychopathology severe enough to create the expectation that she would have difficulty in completing tasks of daily living in a timely manner."

Id. at p. 4.  He further noted that Haynes

> had an air of ongoing paranoia in addition to the paranoia [she] reported, and referential thinking[3] was evident. . . .  Mood was significantly depressed and affect was blunted. . . .  I definitely believe that the claimant does intermittently hallucinate as she described. . . .  She showed some short term and intermediate memory deficits judged to be due to the cognitive dulling effects of her depression.  Situational judgment was grossly intact and insight was limited.

Id.  Dr. Richoux diagnosed schizoaffective disorder,[4] a more serious illness than the mild dysthymia that he diagnosed in 2009.

---

[3]An idea of reference means "a delusion that the remarks one overhears and people one encounters seem to be concerned with and usually hostile to oneself."  MedlinePlus Medical Dictionary (Merriam-Webster, Inc. 2012), http://www.merriam-webster.com/medlineplus/idea+of+reference.  See also Dorland's at 469 (delusion is "a false belief that is firmly maintained in spite of incontrovertible and obvious proof or evidence to the contrary and in spite of the fact that other members of the culture do not share the belief").

[4]According to The Merck Manual Online, schizoaffective disorder
> is characterized by significant mood symptoms, psychosis, and other symptoms of schizophrenia.  It is differentiated from schizophrenia by occurrence of [one or more] episodes of depressive or manic symptoms. . . .  The diagnosis requires that significant mood symptoms (depressive or manic) be present for a substantial portion of the total duration of illness, concurrent with symptoms of schizophrenia. . . .  The prognosis is somewhat better than that for schizophrenia but worse than that for mood disorders. . . .  Because schizoaffective disorder often leads to long-term disability, comprehensive treatment (including drugs, psychotherapy, and community support) is often required.

The Merck Manual Online (rev. June 2008 by Juan R. Bustillo, M.D.), http://www.merckmanuals.com/professional/psychiatric_disorders/schizophrenia_and_related_disorders/schizoaffective_disorder.html?qt=schizoaffective disorder&alt=sh.

On April 2, 2012, Dr. Richoux also completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) that is consistent with the findings in his narrative report and indicates that plaintiff's functional abilities have deteriorated since his December 2009 examination. Record Doc. No. 31-3 at pp. 7-9. His filling in a blank on that form to state that plaintiff's limitations "were . . . first present" in 2009 appears to be based solely on plaintiff's report that she began mental health treatment in 2009, and does not establish a reasonable possibility that the ALJ's decision would be changed by this evidence, in light of the other substantial evidence in the record that the ALJ reviewed, especially Dr. Richoux's own December 2009 report. For the same reasons as discussed above regarding his narrative report, this form is not material.

Thus, Dr. Richoux's new reports are not material to the instant case, but may constitute evidence that plaintiff's condition has deteriorated since the ALJ's decision in March 2009. If Haynes has evidence that her mental illness or any other severe impairments became disabling after the ALJ's decision, she can use the evidence to apply for benefits for the appropriate period, as apparently she already has, but not in this case concerning a different time period. Shave, 238 F.3d at 597; Falco, 27 F.3d at 164 n.20.

Because the new evidence is not material and does not warrant a remand to the Commissioner, the court need not address plaintiff's new argument in her motion to submit Dr. Richoux's report that the report establishes that she met Listing 12.03 in

addition to meeting Listing 12.04 as of the date of the ALJ's decision, as she originally argued to the ALJ and to this court.

Accordingly, plaintiff's motions to submit new evidence are DENIED.

V.     ANALYSIS OF PLAINTIFF'S APPEAL

A.     Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Perez, 415 F.3d at 461; Loza, 219 F.3d at 393. This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton, 209 F.3d at 452. The Commissioner, rather than the courts, must resolve conflicts in the evidence. Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma,

503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Perez, 415 F.3d at 461. Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Id.; Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for SSI, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2009). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Perez, 415 F.3d at 461; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[5] The five-step

_____

[5]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  <u>Perez</u>, 415 F.3d at 461.

The claimant has the burden of proof under the first four parts of the inquiry.  If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.  When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  <u>Id.</u>; <u>Newton</u>, 209 F.3d at 453.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history."  <u>Martinez</u>, 64 F.3d at 174.

---

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

B.    Factual Background

Haynes testified that she was 49 years old, had completed ninth grade and had not been in special education classes, although she believed she should have been. She said she was separated from her husband and lived alone. (Tr. 33-34).

Plaintiff stated that she had received unemployment compensation benefits until the previous November and receives food stamps. She testified that she last worked in October 2008. She said she stopped working because she had fallen at work, then was in a car accident and her "time . . . ran out for getting back to work." (Tr. 35). She confirmed that she had stopped working because she was laid off and had received unemployment compensation benefits through November 2010. She stated that she had looked for work after she was laid off, but said she has trouble filling out applications. She said no one had offered her a job while she was looking because of her low education level and because she had not worked in a while.

Haynes testified that she has always had mental health problems, including hearing voices and having difficulty getting along with other people, but she never paid much attention to it until May 2009. (Tr. 36). She said she had not received any mental health treatment before that date, and she sought treatment at Chartres-Pontchartrain because the voices became more regular. She has never been hospitalized for mental health treatment. She said she was diagnosed with thyroid problems and hepatitis C as a result of tests at Charity Hospital before Hurricane Katrina. (Tr. 37). She testified that she was

told she had a little inflammation around her liver and that medication for it would probably cause more harm than it would help.

Plaintiff said her medications for her mental problems have been adjusted several times since she began treatment. She stated that she never took medicine for mental health problems before May 2009. She testified that her medications make her jittery, instead of calming her down, and that, at one time, one of the drugs made her sleep too much. (Tr. 38-39). She said that she now has no noticeable side effects and that her medications calm her down and seem to be working. She confirmed that she takes risperidone[6] for schizophrenia and sertraline[7] for depression daily. She stated that she has no trouble obtaining her medications from the clinic, as long as she goes there on time, and that the clinic gives her bus tokens to travel to and from the clinic. (Tr. 39-40).

Haynes testified that her medications help and that she does not hear voices when she takes it. She stated that, despite taking her medications as prescribed, she feels jumpy, cannot sit still and has to walk and count a lot. She said she felt like standing up

---

[6]Risperdal (generic name: risperidone) "is prescribed for the treatment of schizophrenia, a severe mental disorder that can cause delusions (false beliefs) and hallucinations. It is also used for the short-term treatment of mania associated with bipolar disorder." PDRhealth, http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/ris1382.shtml.

[7]Sertraline hydrochloride, the generic name for Zoloft, "is an antidepressant medication known as a selective serotonin reuptake inhibitor (SSRI). It is used to treat major depression, obsessive-compulsive disorder, panic disorder, post-traumatic stress disorder, premenstrual dysphoric disorder, and social anxiety disorder." Id., http://www.pdrhealth.com/drugs/rx/rx-mono.aspx?contentFileName=Zol1503.html&contentName=Zoloft&contentId=873.

during the hearing. She does not know why she sometimes feels the need to stand and walk. (Tr. 40). She said this happens occasionally when she is at home. She testified that, as long as she takes her medication, she has no other mental health problems and is able to take the bus and do her normal daily activities. She stated that her medications have helped her control her anger, as long as nobody gets on her nerves. (Tr. 41).

Plaintiff said she cannot work because she has problems getting along with people, both strangers and family members, and she does not function well enough mentally to work. She admitted that the medications help her control her anger and get along better with people, but said that she still has incidents about once or twice a week. (Tr. 42-43). She stated that when an incident occurs and she loses her temper, she tries to get away and take her medication. For example, she said that her mother says things in insulting ways and pokes fun at her, which gets on her nerves, and then they argue. She stated that she deals with it by leaving or asking her mother to leave. Haynes said she has children, with whom she sometimes gets along, but it is not an issue because they are currently in jail. (Tr. 43). She stated that she had difficulty getting along with her husband and that she does not often see her brothers and sisters.

Upon examination by her attorney, plaintiff testified that her medications have reduced, but not eliminated, her angry outbursts and crying spells, about which she complained when she first started treatment at Chartres-Pontchartrain. She said she still sometimes cries for no reason, such as when she is watching a television program that

is not sad.  She stated that, if not for her medication, she would stay awake for days and not sleep at all.  (Tr. 44-45).

Haynes testified that her appetite goes up and down.  She said she does not eat breakfast and sometimes cannot force herself to eat until late at night when she is hungry.  (Tr. 45-46).  She said she has no hobbies, activities or friends.  She confirmed that she does not have auditory hallucinations as long as she takes her medication.  She stated that she sometimes has problems with focus and concentration even with her medications.  (Tr. 46).

Plaintiff testified that she has not used cocaine since 1998 and that she finished drug court in 2002.  She said she used to drink beer, but not enough to affect her ability to work.  (Tr. 47).  She stated that she only drank beer on weekends and usually had just three beers on each of the two weekend nights.  She said she has not had a drink in a year or more and that alcohol is not a problem for her.  (Tr. 48).

C.    Vocational Expert Testimony

A vocational expert, Patricia Ehlinger, testified that plaintiff's past relevant jobs as a food preparation worker, housekeeper and janitor were unskilled work at a light exertional level.  (Tr. 49).

The ALJ posed a hypothetical of a person with the residual functional capacity to perform work with no exertional limitations, but who is limited to simple, routine and repetitive tasks involving only occasional interaction with the public and with coworkers.

Ehlinger testified that such a person could perform plaintiff's past relevant work as a housekeeper or janitor, but could not work in food preparation because of the need to work on a team with coworkers. The vocational expert stated that such a person could perform other light, unskilled jobs, such as stocker, order filler and laundry worker, which are available in the state and national economies. (Tr. 50-51).

The ALJ then added a limitation that the hypothetical individual, as a result of severe mental impairments, cannot sustain sufficient concentration, persistence or pace to do even simple, routine tasks on a regular and continuing basis for eight hours a day, five days a week, or an equivalent forty-hour work week. Ehrlinger testified that such a person could not perform plaintiff's past relevant work or any jobs. (Tr. 51-52).

Upon questioning by plaintiff's attorney, Ehrlinger explained that an order filler does not take an order from a customer, but is handed an order and then fills it by placing the items in a box, so the job does not involve interaction with people. (Tr. 52). Plaintiff's attorney modified the ALJ's last hypothetical to include the claimant's inability to go to work for a day once or twice a week because of "flareups in her mental condition." Ehrlinger testified that a person with this limitation could not perform any of plaintiff's past relevant jobs or any work. (Tr. 52-53).

D.     Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 18-21).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.     Plaintiff's Appeal

1.     The ALJ did not err in finding that plaintiff does not meet or medically equal Listing 12.04.

Haynes argues that the ALJ erred by finding at the third step of the sequential evaluation that she does not meet or medically equal Listing 12.04 for affective disorders, specifically, bipolar disorder.  She contends that the ALJ incorrectly found that the medical records did not support Dr. Gonzales-Qader's opinion on a Mental Health Residual Functional Capacity Assessment form dated December 22, 2010, that plaintiff has "markedly limited" abilities in each one of the 20 areas of mental functioning listed on the form.  (Tr. 236-39).  These opinions would, if accepted, qualify Haynes as disabled per se under Listing 12.04.

Whether an impairment or combination of impairments meets a listing is a medical question that can be answered <u>only</u> by medical evidence.  20 C.F.R. §§ 404.1526(b), 416.926(b); <u>McCuller v. Barnhart</u>, 72 F. App'x 155, 158 (5th Cir. 2003); <u>Selders v. Sullivan</u>, 914 F.2d 614, 619 (5th Cir. 1990); <u>McKnight v. Astrue</u>, No. 07-1654, 2008 WL

4387114, at *3 (W.D. La. Aug 15, 2008), <u>report & recommendation adopted</u>, 2008 WL 5746939 (W.D. La. Sept. 23, 2008), <u>aff'd</u>, 340 F. App'x 176 (5th Cir. 2009). "The specified medical criteria [of a listing] are designed to be demanding and stringent because they lead to a presumption of disability[,] making further inquiry unnecessary." <u>Anderson v. Astrue</u>, No. 3:11-CV-0051-K-BH, 2011 WL 3331821, at *6 (N.D. Tex. July 11, 2011), <u>report & recommendation adopted</u>, 2011 WL 3347857 (N.D. Tex. July 29, 2011) (citing <u>Sullivan v. Zebley</u>, 493 U.S. 521, 532 (1990); <u>Falco</u>, 27 F.3d at 162).

"For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to <u>all</u> the criteria for the one most similar listed impairment." <u>Zebley</u>, 493 U.S. at 5301 (citing 20 C.F.R. § 416.926(a); SSR 83-19, at 91) (emphasis in original).

"An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify. If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that listings-level impairments are not present." <u>Gewin v. Astrue</u>, No. 10-1008, 2011 WL 3924232, at *3 (W.D. La. Aug. 3, 2011), <u>report & recommendation adopted</u>, 2011 WL 3954877 (W.D. La. Sept. 6, 2011) (citing <u>Zebley</u>, 493 U.S. at 530-31; <u>Selders</u>, 914 F.2d at 620); <u>accord</u> <u>Taylor v. Astrue</u>, No. 3-10-CV-1158-O-BD, 2011 WL 4091506, at *8

(N.D. Tex. June 27, 2011), <u>report & recommendation adopted</u>, 2011 WL 4091503 (N.D. Tex. Sept. 14, 2011).

Thus, Haynes must identify specific medical evidence demonstrating that she meets or medically equals <u>all</u> the criteria of Listing 12.04.  The listing provides that an affective disorder is "[characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (2010).  To satisfy Listing 12.04, plaintiff must meet the requirements of paragraphs A <u>and</u> B of the listing.

Paragraph A requires plaintiff to establish medically documented persistence, either continuous or intermittent, of either depressive syndrome characterized by at least four out of nine listed symptoms; manic syndrome characterized by at least three out of eight listed symptoms; or bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes).  <u>Id.</u> § 12.04(A).

The ALJ in the instant case found that the record contained evidence of symptoms consistent with paragraph A.  However, the ALJ held that Haynes did not meet the paragraph B requirements of Listing 12.04 because she did not show that her disorder results in, as required, <u>at least two</u> of the following:

1.   Marked restriction of activities of daily living; or
2.   Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

Id. §§ 12.04(B), 12.06(B).

"Marked" means "more than moderate, but less than extreme." Id. § 12.00(C). "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning . . . . The term repeated episodes of decompensation, each of extended duration in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." Id. § 12.00(C)(4).

The ALJ found that Haynes has no limitations in her activities of daily living, only moderate difficulties in her social functioning and in her concentration, persistence and pace, and no reported episodes of decompensation. Thus, the ALJ found that plaintiff did not satisfy even one of the paragraph B criteria of Listing 12.04.

Substantial evidence supports the ALJ's findings. First, as to plaintiff's activities of daily living, Haynes stated in her disability report dated October 9, 2009 that she lives alone and has no problems with caring for herself, including taking her medications, preparing meals, driving, shopping and taking care of her personal needs. (Tr. 142-45). She told Dr. Richoux on December 4, 2009 that she took care of her personal needs, routine household chores and food preparation, although someone else drove her to the grocery store. Dr. Richoux opined that her psychopathology was not severe enough to

prevent her from completing tasks of daily living in a timely manner. (Tr. 196). Haynes testified at the hearing that she lives alone, takes her medications daily, rides the bus, completes her normal daily activities and goes to the clinic as scheduled. A consulting psychologist, Charlotte Ducote, Ph.D., reviewed plaintiff's medical records and completed a Psychiatric Review Technique form on January 12, 2010. Dr. Ducote opined that Haynes had no restrictions in her activities of daily living. (Tr. 209). This is all substantial evidence that she has no significant limitations in her activities of daily living. Plaintiff cites to no specific medical evidence that substantially supports her contention that she has <u>marked</u> limitations in this area.

Second, the ALJ found that Haynes has moderate difficulties in social functioning. The ALJ's summary of plaintiff's medical records is accurate and the evidence she cited substantially supports her finding. Plaintiff's medical records and her own testimony confirm that her mental health improved after she began treatment at Chartres-Pontchartrain on May 21, 2009. The clinic records document that she had fair to good response to her medications during 18 months of treatment. It was noted throughout the clinic records, beginning almost immediately after her first visit and consistently throughout 2010, that her condition became stable without symptoms or complaints of psychosis or significant depression. (Tr. 182, 216-33). Haynes herself testified that her medications and other treatment have improved her anger control and her ability to get along with other people. A medical condition that can reasonably be remedied by

surgery, treatment or medication is not disabling.  Leblanc v. Chater, 83 F.3d 419, 1996 WL 197501, at *3 (5th Cir. 1996); Johnson v. Bowen, 864 F.2d 340, 348 (5th Cir. 1988); Bridges v. Massanari, No. 00-2639, 2002 WL 202221, at *3 (E.D. La. Feb. 7, 2002); see also Bolton v. Apfel, 237 F.3d 632, 2000 WL 1701816, at *1 (5th Cir. Nov. 3, 2000) (affirming denial of benefits when, "[a]lthough the medical records reflect that Bolton did experience a single episode of severe depression, her depression responded to treatment and had apparently resolved by the time Bolton was examined by Dr. Greer.").

Dr. Gonzales-Qader noted on October 22, 2009 that plaintiff was tolerating people well and had recently enjoyed herself for several hours at a party. (Tr. 184).  Haynes complains in her memorandum that the ALJ "cherry-picked" this one notation to support a finding of only moderate limitations in social functioning.  However, plaintiff does not cite, and my review of the records does not reveal, any other evidence that substantially documents that she had marked difficulties in social functioning that had lasted or were expected to last for 12 continuous months.  Dr. Richoux reported on December 4, 2009 that he did not believe that Haynes exhibited true paranoia, but only had some personality-based issues in trusting others. (Tr. 195-96).  Dr. Ducote concluded after her review of the medical records on January 12, 2010 that Haynes had only mild limitations in her social functioning. (Tr. 209).  The ALJ held that Haynes had moderate, or more than mild but less than marked, limitations in this area.  The evidence substantially supports the ALJ's findings regarding plaintiff's social functioning.

Third, the ALJ found that Haynes has only moderate difficulties in maintaining concentration, persistence and pace. This finding is supported by Dr. Ducote's opinion in January 2010 that Haynes has only mild difficulties in this area (Tr. 209), although the ALJ again assessed plaintiff with a higher level of severity than Dr. Ducote found. Dr. Richoux's findings in December 2009 that plaintiff's thought process was goal directed without looseness of association, obsessions, delusions or ideas of reference and that she had only mildly depressed mood, normal intellect, no significant memory deficits, grossly intact situational judgment and unremarkable insight also support the ALJ's holding. Dr. Richoux opined that there were "no major current psychiatric hinderances [sic] to [plaintiff's] ability to sustain concentration and persistence in a work setting. I do not see her as significantly impaired in any of her major adaptive capacities by psychiatric factors at this time." (Tr. 197). Haynes has not cited any medical evidence that substantially contradicts this evidence and establishes that she had marked limitations in her concentration, persistence and pace.

Finally, Haynes does not contend that she met the fourth factor of paragraph B of Listing 12.04, which requires repeated and extended episodes of decompensation. In the absence of marked limitations in at least two of the first three areas of functioning in paragraph B, Haynes cannot satisfy Listing 12.04.

Dr. Gonzales-Qader's opinions on the Mental Health Residual Functional Capacity Assessment form that she completed on December 22, 2010 conflict with the other

medical findings discussed above. Plaintiff's argument regarding the proper weight to be accorded to the treating physician's opinions is discussed in the next section of this report and recommendation. Pretermitting for the moment the question of the proper weight to be accorded to Dr. Gonzales-Qader's opinions on that form, the ALJ, as she is obligated to do, weighed conflicting medical opinions and resolved the conflict in favor of the opinions of Dr. Richoux and, to some extent, Dr. Ducote and the treatment notes (including Dr. Gonzales-Qader's own) from Chartres-Pontchartrain. Escalante v. Astrue, 286 F. App'x 179, 180 (5th Cir. 2008) (citing Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990)). "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Newton, 209 F.3d at 455 (quotation omitted); see also 20 C.F.R. § 404.1527(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all the other evidence and see whether we can decide whether you are disabled based on the evidence we have.").

The ALJ's decision shows that she carefully considered, but ultimately rejected, Dr. Gonzales-Qader's conclusions that plaintiff's functional abilities were seriously limited to no useful ability to function in all work-related mental activities. "[T]he Act empowers the ALJ to analyze the physicians' testimony. Substantial evidence supports the ALJ's decision to disregard [Dr. Gonzales-Qader's] conclusions. That basis is

enough to survive our review." Greenspan, 38 F.3d at 237. Thus, this assignment of error lacks merit.

2.    The ALJ did not err in assessing the weight of the medical opinions.

Haynes argues that the ALJ erred when she accorded "non-controlling weight" to the opinions of plaintiff's treating psychiatrist, Dr. Gonzales-Qader, as stated on the Mental Health Residual Functional Capacity Assessment form dated December 22, 2010, and instead gave "great weight . . . to the medical records and opinions" of consultative examining psychiatrist, Dr. Richoux. (Tr. 22). The ALJ explained that Dr. Richoux's opinions "comport with the partially credible testimony of the claimant and the objective evidence of record." The ALJ accorded Dr. Richoux's opinion "significant weight" because his findings that Haynes was capable of managing her own funds, would have no difficulty understanding instructions in a work setting or sustaining concentration and persistence at work, and had "no significant impairments in her general adaptive capacities related to her diagnosed psychiatric factors . . . seem generally consistent with the medical evidence in its entirety." Id. On the other hand, the ALJ found that Dr. Gonzales-Qader's opinions on the checklist form were not supported by any diagnosis or narrative explanation and consisted solely of "summary conclusions that the claimant had 'markedly limited' functional limitations . . . , extreme limitations" that were not supported by "the findings in the clinical record . . . . Dr. Gonzales' opinions would have

been entitled to greater weight had she provided a narrative explanation as requested" on the form.  Id.

The ALJ's weighing of the two psychiatrists' opinions is substantially supported by the evidence.  Appellate courts have often held that checklist opinions are unworthy of credence when they are not adequately supported by or are inconsistent with the medical records.  See Peck v. Barnhart, 214 F. App'x 730, 738 (10th Cir. 2006) (The ALJ provided legitimate reasons for rejecting a doctor's opinion consisting "of checked boxes and circled numbers on a form" when the "opinion was not supported with additional explanation" nor justified by the doctor's treatment notes.); Holmstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001) ("the checklist format, generality, and incompleteness of the assessments limit their evidentiary value"); Johnson v. Apfel, 189 F.3d 561, 564 (7th Cir. 1999) (upholding ALJ's rejection of physician's check-box form when it was contradicted by evidence in the record); Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) (quotation omitted) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best. . . . [When] these so-called reports are unaccompanied by thorough written reports, their reliability is suspect . . . ."); Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987) ("Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence.").  As the ALJ noted, Dr. Gonzales-Qader's opinions on the checklist form, which was completed less than one month before the scheduled hearing,

were not supported by any narrative explanation on the form itself and were not substantially supported by the Chartres-Pontchartrain treatment notes.

"At the same time, the ALJ may disregard the treating physician's opinions if he finds, with support in the record, that the physician is not credible and is leaning over backwards to support the application for disability benefits." Thompson, 232 F. App'x at 424 (quotation omitted). District courts in the Fifth Circuit have found that an ALJ's determination that a doctor's opinions were not credible was supported when the physician completed a checklist form without any narrative citations to clinical findings, Segovia v. Astrue, No. H-11-0727, 2012 WL 948815, at *17 (S.D. Tex. Mar. 2, 2012), report & recommendation adopted, 2012 WL 951543 (S.D. Tex. Mar. 19, 2012); a physician's recent letters "continue to advocate that plaintiff is disabled despite widespread documented improvement and stabilization in plaintiff's symptoms through medication," and the most recent opinion letter had been prepared by the doctor and considered by the Appeals Council more than two years after the ALJ's decision, Musial v. Astrue, No. 4:10-CV-280-A, 2011 WL 5346307, at *6 (N.D. Tex. Nov. 3, 2011); the physician appeared to base his conclusion solely on plaintiff's uncorroborated complaints, rather than on objective clinical findings from his own examination, Gordon v. Astrue, No. 4:09-CV-059-A, 2010 WL 6369737, at *5 (N.D. Tex. Aug. 9, 2010), report & recommendation adopted, 2011 WL 1195999 (N.D. Tex. Mar. 30, 2011); or the doctor's statements were brief and conclusory, and a testifying medical expert described

the treating doctor's residual functional capacity "assessment as going to an extreme" without evidentiary support in the record. Gannon v. Astrue, No. 3:07-CV-1057-N, 2008 WL 4490738, at *14 (N.D. Tex. Oct. 3, 2008).

In the instant case, Dr. Gonzales-Qader's opinions suffer from similar defects. Her opinions were prepared shortly before the administrative hearing, were merely check marks on a form, were not supported by any diagnosis or narrative explanation and were substantially contradicted by plaintiff's treatment records and by Dr. Richoux's firsthand examination and opinions.

Plaintiff correctly states that Dr. Gonzales-Qader diagnosed her with "bipolar mixed severe [with] psychosis, PTSD [post-traumatic stress disorder], OCD [obsessive compulsive disorder]" on August 26, 2010. (Tr. 221). However, the "mere diagnosis of a mental impairment (such as depression) does not establish a claimant's disability claims." Martin v. Chater, No. 95 C 0245, 1995 WL 505955, at *6 (N.D. Ill. Aug. 23, 1995) (citing Anderson v. Sullivan, 925 F.2d 220, 222 (7th Cir. 1991)); accord Harris v. Barnhart, No. 02-55540, 2003 WL 21054733, at *2 (9th Cir. 2003); Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998); Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991); Arroyo v. Secretary of Health & Human Servs., 932 F.2d 82, 87-88 (1st Cir. 1991); Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983). Plaintiff "must show that she was so functionally impaired by her [diagnosed impairment] that she was precluded from

engaging in any substantial gainful activity." Id. (emphasis added); accord Anthony v. Sullivan, 954 F.2d 289, 293 (5th Cir. 1992).

As previously discussed, Haynes's treatment records from Chartres-Pontchartrain document that she had generally good responses to her medications during 18 months of treatment. These notes are consistent with Dr. Richoux's report. The treatment notes support the ALJ's findings that, with medication management, plaintiff's condition stabilized so that, especially throughout 2010, she had no significant complaints of psychosis or depression. Specifically, on November 5, December 8, and December 22, 2009, and on January 25, February 10, February 25, March 26, April 28, May 27, July 29, August 26, September 23, September 27, October 21 and November 18, 2010, the progress notes repeatedly indicate that Haynes's condition was stable, her thought processes were logical and goal directed, her speech and behavior were within normal limits, and she reported no audio or visual hallucinations, delusions, suicidal ideation or significant medication side effects. (Tr. 182, 216-33). On July 6, 2010, although Haynes exhibited a flat affect and reported that she had had occasional auditory hallucinations since her last visit, she reported that she had run out of medications because she had missed her previous scheduled visit. She admitted during that visit that the medications helped her "a whole lot." (Tr. 223).

At plaintiff's July 29, 2010 visit, one month before Dr. Gonzales-Qader diagnosed plaintiff with bipolar disorder severe mixed with psychosis, post-traumatic stress disorder

and obsessive compulsive disorder, the psychiatrist assigned Haynes a score of 69 on the Global Assessment of Functioning ("GAF")[8] scale. (Tr. 222). "A GAF score of 61-70 reflects mild symptoms or 'some difficulty' in those areas, but the individual 'generally function[s] pretty well.'" Sims v. Barnhart, 309 F.3d 424, 427 n.5 (7th Cir. 2002) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994)). "A GAF score of 65 [to 70] indicates 'only mild dysfunction.'" Bartyzel v. Comm'r of Soc. Sec., 74 F. App'x 515, 520 (6th Cir. 2003) (quoting DSM-IV-TR). While not determinative, the GAF score is consistent with the progress notes and with Dr. Richoux's findings, and contradicts Dr. Gonzales-Qader's opinion that Haynes has extreme limitations.

Because the evidence substantially supports the ALJ's decision to accord non-controlling weight to Dr. Gonzales-Qader's opinions on the Mental Health Residual

---

[8]"A GAF score represents a clinician's judgment of an individual's overall level of functioning. . . . Lower GAF scores signify more serious symptoms." George v. Barnhart, 458 F. Supp. 2d 314, 323 n.5 (S.D. Tex. 2006). According to the Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. TR 2000) ("DSM-IV-TR"),

> "[t]he GAF Scale is divided into 10 ranges of functioning [from 1 to 100]." Id. "Making a GAF rating involves picking a single value that best reflects the individual's overall level of functioning." Id. "The description of each 10-point range in the GAF Scale has two components: the first part covers symptom severity, and the second part covers functioning." Id. "The GAF rating is within a particular decile if either the symptom severity or the level of functioning falls within the range." Id. Notably, when a patient's symptoms severity and level of functioning are discordant[,] "the final GAF rating always reflects the worst of the two." Id. at 32-33. Thus, the GAF rating . . . may reflect plaintiff's symptoms severity, his level of functioning, or both. Id.

Tuck v. Astrue, No. 1:07CV-00084-EHJ, 2008 WL 474411, at *7-8 (W.D. Ky. Feb. 19, 2008).

Functional Capacity Assessment form dated December 22, 2010 and to give great weight to Dr. Richoux's opinions, this assignment of error lacks merit.

## CONCLUSION

The ALJ did not err in finding that plaintiff does not meet or medically equal Listing 12.04 for affective disorders or in affording greater weight to the opinion of Dr. Richoux than to that of Dr. Gonzales-Qader.

## **RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served

with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[9]

New Orleans, Louisiana, this ___19th___ day of July, 2012.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[9]Douglass referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.